# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 7051 | **DATE** | 4/16/2004 |
| **CASE TITLE** | CRESSWOOD FARM, INC. vs. ILLINOIS INSURANCE GUARANTY FUND | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant's motion for summary judgment [13-1] is granted. ENTER MEMORANDUM OPINION AND ORDER.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| ✓ | Notices mailed by judge's staff. | | APR 19 2004 | 24 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | 4/16/2004 | |
| CB | courtroom deputy's initials | | date mailed notice PW | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**

**APR 1 9 2004**

| | |
|---|---|
| CRESSWOOD FARM, INC., | ) |
| Plaintiff, | ) No. 03 C 7051 |
| v. | ) Suzanne B. Conlon, Judge |
| ILLINOIS INSURANCE GUARANTY FUND, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Cresswood Farm, Inc. ("Cresswood") originally filed this action against Illinois Insurance Guaranty Fund ("the Fund") in the Circuit Court of Cook County, Illinois seeking a declaratory judgment and specific performance regarding the Fund's purported obligation to defend, indemnify and reimburse Cresswood for a workers' compensation claim under the Illinois Insurance Guaranty Fund Act ("the Act"), 215 ILCS 5/532 *et seq.* Specifically, Cresswood claims § 534.3(b)(iv) of the Act is unconstitutional under the equal protection and due process clauses of the United States and Illinois constitutions and the special legislation clause of the Illinois constitution. The Fund timely removed the action to this court based on federal question jurisdiction and moves for summary judgment.

## BACKGROUND

The following facts are undisputed unless otherwise noted. The Fund is a non-profit, unincorporated legal entity created pursuant to the Act. Def. Facts ¶ 1. Cresswood is a closely-held corporation organized under Illinois law in 1988 by its sole shareholders, husband and wife Bryan C. and Christina Cressey ("the Cresseys"). *Id.* at ¶ 2. In April 1999, HIH America Compensation

1

and Liability Co. of Illinois ("HIH") issued a workers' compensation policy. Pl. Add. Facts ¶ 228. The face of the 1999 HIH policy read "INSURED: Bryan C. & Christina Cressey . . . Business Type Corporation." *Id.* at ¶ 230. In March 2000, HIH issued another workers' compensation policy containing identical language. *Id.* at ¶ 242. The parties dispute whether the insured for purposes of the policies was Cresswood, the corporation, or the Cresseys individually. Def. Resp. Pl. Add. Facts ¶ 230, 242; Pl. Add. Facts ¶ 231; Pl. Resp. Def. Facts ¶ 10. In September 2000, Juergen Roesch, an individual working at Cresswood Farm, was thrown from a horse while on the premises of a third party. Pl. Add. Facts ¶ 251, 255; Def. Facts ¶ 18. This accident rendered Roesch a paraplegic from the chest down. Pl. Add. Facts ¶ 255. Pursuant to the 2000 HIH policy, HIH paid benefits on Roesch's claim for workers' compensation until HIH became insolvent in May 2001. Pl. Add. Facts ¶ 280. In June 2001, the Fund sent a letter to the Cresseys, informing them that HIH was in liquidation and that it had "assumed responsibility for the obligations of [HIH] to Illinois claimants and insured subject to the limitations and conditions of the [Act]." Def. Facts ¶ 30; Pl. Resp. Def. Facts ¶ 30. The letter included an affidavit requiring the insured to attest to its consolidated net worth, as well as all of its affiliates as of December 31, 2000. Def. Facts ¶ 34. Because the Cresseys' net worth exceeded $25 million as of December 31, 2000, the Fund refused to make further payments on Roesch's claim. Pl. Add. Facts ¶¶ 287A, 288.

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once a moving party has met its

burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II. The Illinois Insurance Guaranty Fund Act

In order to protect policyholders and claimants, Illinois established an insurance guaranty fund pursuant to the Act to pay claims in the event an insurance company becomes insolvent. 215 ILCS 5/532 *et seq.*; *Hasemann et al. v. White et al.*, 686 N.E.2d 571, 572 (Ill. 1997). However, policyholders and claimants do not have absolute entitlement to payment under the Act. *Id.* Instead, the Act limits payment to a "covered claim." Section 534.3 of the Act provides that a "covered claim" does not include:

> any first party or third party claim by or against an insured whose net worth on December 31 of the year next preceding the date the insurer becomes an insolvent insurer exceeds $25,000,000; provided that an insured's net worth on such date shall be deemed to include the aggregate net worth of the insured and all of its affiliates as calculated on a consolidated basis.

215 ILCS 5/534/3(b)(iv) ("the affiliate net worth exclusion"). The Act broadly defines "affiliate" as "a person who directly, or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with the specified person on December 31 of the year next preceding the date the insolvent company became an insolvent company." 215 ILCS 5/534.7.

The Act is based on the Model Property and Casualty Post-Assessment Guaranty Association Act. *Hasemann et al. v. White et al.*, 686 N.E.2d 571, 572 (Ill. 1997). The Illinois legislature apparently deviated from the Model Act by including the affiliate net worth exclusion. The Model

3

Act used a subsidiary net worth exclusion, calling for the aggregation of the net worth of the insured and its subsidiaries. Illinois, however, is not alone. Both the Arkansas and Nevada legislatures, for example, have used the affiliate net worth exclusion in establishing their insurance guaranty funds. Ark. Code Ann. § 23-90-103 (2004); Nev. Rev. Stat. § 687A.033 (2004).

### III. Constitutionality of the Act's Affiliate Net Worth Exclusion

The same standard governs the validity of the Act's affiliate net worth exclusion under the due process and equal protection clauses of the Illinois and federal Constitutions and the special legislation clause of the Illinois Constitution. *Smith v. Severn*, 129 F.3d 419, 424 n. 3 (7th Cir. 1997); *McLean v. Dep't of Revenue of the State of Illinois*, 704 N.E.2d 352, 359 (Ill. 1998); *Chicago Nat. League Ball Club, Inc. v. Thompson*, 483 N.E.2d 1245, 1250 (Ill. 1985). Because no fundamental constitutional right or suspect class is implicated, the parties agree that the exclusion need only withstand rational basis review in order to survive a challenge. Under this standard of review, the exclusion is presumed to be constitutional and Cresswood has the burden of showing the absence of rationality. *Fed. Communications Comm'n v. Beach Communications*, 508 U.S. 307, 314 (1993). Cresswood's burden requires it "to negative every conceivable basis which might support it" irrespective of "whether the conceived reason for the challenged distinction actually motivated the legislature." *Fed. Communications Comm'n v. Beach Communications, Inc.*, 508 U.S. 307, 315 (1993), *quoting Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973) (internal quotation marks omitted). The exclusion will only be deemed unconstitutional if "completely, ludicrously arbitrary." *Pontarelli Limousine, Inc. v. City of Chicago*, 929 F.2d 339, 341 (7th Cir. 1991). The "rational basis review in equal protection analysis 'is not a license for courts to judge

4

the wisdom, fairness, or logic of legislative choices.'" *Heller v. Doe*, 509 U.S. 312, 319 (1993), quoting *Fed. Communications Comm'n v. Beach Communications*, 508 U.S. at 313.

Cresswood concedes that the Fund is entitled to summary judgment on its claims if the inclusion of the affiliate net worth exclusion in § 534.3 is constitutional because, as the sole shareholders, the Cresseys are statutory "affiliates" of Cresswood. Pl. Mem. Opp. Summ. Judg. at 4. The Fund has advanced numerous rational arguments, or conceivable bases, for net worth exclusions generally, and the Act's affiliate net worth exclusion specifically. The Fund argues the exclusion is rational because (1) the scope of the Fund's coverage should be limited in order to preserve resources for those in need of protection; (2) the high net worth insured is a "sophisticated buyer" who "ought to be able to buy insurance intelligently so that it is not insured by an unsound insurer"; (3) the high net worth insured would not experience "extreme hardship" as a result of losses not covered by the Fund; (4) public policy is not served by "send[ing] bills . . . for wealthy persons' losses or claims against such wealthy persons to all of the homeowners and small businesses to pay"; (5) the affiliate net worth exclusions prevent the insured from manipulating its corporate form so as to obtain coverage under the Act; and (6) the affiliate net worth exclusion allows the Fund to ascertain the insured's actual financial resources by including its affiliates.[1]

---

[1] The quoted material is taken from the minutes of the National Association of Insurance Commissioners ("NAIC"), Guarantee Funds Task Force, 1985 Proceedings, Vol. II, at 473-74, 505 and 1986 Proceedings, Vol. I, at 420. Def. Mem. Supp. Summ. J. at 12. It is of no consequence that the Fund's rationale for the affiliate net worth exclusion is found in NAIC proceedings, as opposed to legislative history. The Illinois legislature based the Act on the Model Act. *Hasemann et al. v. White et al.*, 686 N.E.2d 571, 572 (Ill. 1997). The Fund is not restricted by the Act's overall statutory purpose "to avoid financial loss to . . . policyholders because of the entry of an Order of Liquidation against an insolvent company." 215 ILCS 5/532. It is irrelevant that the Illinois legislature ultimately substituted the broader affiliate net worth exclusion for the subsidiary net worth exclusion. *U.S. Railroad Retirement Board v. Fritz*, 449 U.S. 166, 179 (1980) ("the fact that the line might have been drawn differently at some point is a

Cresswood has not negated each of the conceivable bases identified by the Fund. Instead, Cresswood's constitutional challenge to the affiliate net worth exclusion focuses on two issues. Cresswood argues that the exclusion arbitrarily transfers liability for workers' compensation injuries to non-liable affiliates and pierces the insured's corporate veil by categorically including the net worth of affiliates. Cresswood misunderstands the nature of the Act's affiliate net worth exclusion. The exclusion does not serve to transfer liability for workers' compensation claims to non-liable affiliates. The exclusion is a mere eligibility requirement that determines whether the insured is qualified for the benefits provided by the Act. The affiliate remains unaffected. Nothing in the Act imposes new legal obligations on an affiliate as a result of this determination.

Nor is the exclusion "completely, ludicrously arbitrary" simply because it transcends traditional notions of corporate separateness and liability. By citing federal cases discussing the parameters of corporate separateness and liability to argue that the exclusion arbitrarily pierces the insured's corporate veil, Cresswood fails to appreciate that the legislature's departure is not irrational for the simple reason that the legislature is not bound by the corporate piercing doctrine. A decision to depart from traditional notions of liability is a public policy decision within the province of the legislature, not the courts. The Illinois legislature may have concluded that going beyond the insured's net worth to capture the affiliate's net worth was warranted in order to conserve the Fund's limited resources for those likely in greatest need. It is not indicative of a "classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational."

---

matter of legislative, rather than judicial, consideration"). Cresswood does not contend that the NAIC rationale is not served by the affiliate net worth exclusion.

Pl. Mem. Opp. Summ. J. at 7, *quoting Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 466 (1985)(citation omitted).

Cresswood's reliance on *JMH Properties, Inc. v. Industrial Commission et al.*, 773 N.E.2d 736 (4th Dist. 2002) is similarly flawed. The court's discussion of the unavailability of the veil piercing doctrine with regard to workers' compensation cases was predicated on the limited authority granted to the Illinois Industrial Commission as an administration agency. The court determined that the Illinois legislature did not empower the Industrial Commission's use of any equitable remedies, such as piercing the corporate veil. *Id.* at 738 ("[a]ny alteration in the Act so as to allow the piercing of the corporate veil and reaching of officers, directors, and shareholders must come from the legislature"). Here, the Illinois legislature has empowered the Fund to aggregate the net worth of the insured and its affiliates for purposes of determining eligibility for benefits related to insurance policy claims, including workers' compensation insurance policy claims.

Cresswood contends that the affiliate net worth exclusion is unconstitutional because the Seventh Circuit has "pointedly criticized" the net worth standard generally as an "accounting artifact." *Mathias v. Accor Economy Lodging, Inc.*, 347 F.3d 672, 677-78 (7th Cir. 2003). Cresswood's contention fails to consider that *Mathias* involved the issue of whether punitive damages were excessive, a necessarily particularized case-by-case determination. Legislatures need not be as exacting. *City of Chicago v. Shalala*, 189 F.3d 598, 606 (7th Cir. 1999) ("[a] classification does not fail rational-basis review because it 'is not made with mathematical nicety or because in practice it results in some inequality'") (citations omitted). As Cresswood points out, the Sixth Circuit upheld a net worth standard against constitutional challenge on similar grounds. *Borman's, Inc. v. Michigan Prop. & Cas. Guar. Ass'n*, 717 F. Supp. 468, 479 (E.D. Mich. 1989) ("the

legislature conceivably may have concluded that the ease of administration and the preservation of limited fund resources for legitimate claimants justified the adoption of the rough net worth standard rather than a more precise mechanism of individual determination"). Nor does the fact that *Borman's* only addressed the net worth of the insured change this result. It is simply irrelevant whose net worth – the insured or the affiliate – is considered. The mathematical precision of the net worth standard is the same.

Cresswood has not met its burden. The rationale bases identified by the Fund are not so "patently, wildly, [or] totally irrational" as to render the affiliate net worth exclusion unconstitutional. The Act is a benefit program established by the Illinois legislature. It was not intended to render the Fund absolutely liable to policyholders due to the insolvency of their insurance companies. The affiliate net worth exclusion is an eligibility requirement that the Illinois legislature apparently concluded would assist in weeding out those less likely in need. *U.S. Railroad Retirement Board v. Fritz*, 449 U.S. 166, 179 (1980) ("'task of classifying persons for . . . benefits . . . inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line,' and the fact that the line might have been drawn differently at some point is a matter of legislative, rather than judicial, consideration"), *citing Matthews v. Diaz*, 426 U.S. 67, 83-84 (1976); *Califano v. Boles*, 443 U.S. 282, 296 (1979) ("Congress could rationally chose to concentrate limited funds where the need is likely to be greatest"). The Illinois legislature's rationality is also supported by the fact that a similar affiliate net worth exclusion was promulgated under the Model Rules implementing the Equal Access to Justice Act in order to determine eligibility for benefits. See 46 Fed. Reg. 32900, 32912 (1981).

## CONCLUSION

The affiliate net worth exclusion to compensation under the Illinois Insurance Guaranty Fund Act is constitutional. This court need not reach the issues raised by the parties as to *alter ego* liability and estoppel. The Fund is entitled to summary judgment as a matter of law.

April 16, 2004

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge